## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANTHONY ACOSTA,

     Plaintiff,

v.                                                     Case No. 8:12-CV-01530-EAK-TGW

UNITED RENTALS (NORTH AMERICA), INC.,
a foreign profit corporation,

     Defendant.
_____/

UNITED RENTALS (NORTH AMERICA), INC.,
a foreign profit corporation,

     Counter-Plaintiff,

v.

ANTHONY ACOSTA

     Counter-Defendant.
_____/

### ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND TO STRIKE CERTAIN OF DEFENDANT'S AFFIRMATIVE DEFENSES OR FOR MORE DEFINITE STATEMENT

THIS CAUSE is before the Court on Plaintiff's Motion to Dismiss Counterclaim

for Failure to State a Claim upon Which Relief Can Be Granted and to Strike Certain

of Defendant's Affirmative Defenses or for More Definite Statement (Doc. 9) and the

response thereto (Doc. 15). For the reasons set forth below, the Motion will be

**GRANTED** with respect to Defendant/Counter-Plaintiff's counterclaim and

Defendant/Counter-Plaintiff's eighth affirmative defense, and **DENIED** as to all other

affirmative defenses.

1

## BACKGROUND AND PROCEDURAL HISTORY

The following facts are considered true for the purposes of resolving this

motion. This dispute concerns injuries sustained by Plaintiff/Counter-Defendant

Anthony Acosta ("Acosta") while using a boom lift owned by Defendant/Counter-

Plaintiff United Rentals North America, Inc. ("United"). Acosta rented the boom lift

from United on December 9, 2011, at which time he signed a "Rental Agreement"

("Agreement"). (Compl. ¶ 4 (May 29, 2012); Ans., Affirmative Defs., Demand for Jury

Tr. & Counter Claim ¶ 6, at 7 (July 12, 2012)). The Agreement provided the following

indemnification clause:

> 3. INDEMNITY / HOLD HARMLESS. TO THE FULLEST EXTENT
> PERMITTED BY LAW, CUSTOMER AGREES TO INDEMNIFY, DEFEND
> AND HOLD UNITED, AND ANY OF ITS RESPECTIVE OFFICERS,
> AGENTS, SERVANTS, OR EMPLOYEEES, AND AFFILIATES, PARENTS
> AND SUBSIDIARIES, HARMLESS FROM AND AGAINST ANY AND ALL
> LIABILITY, CLAIMS, LOSS, DAMAGE OR COSTS (INCLUDING, BUT NOT
> LIMITED TO, ATTORNEYS FEES, LOSS OF PROFIT, BUSINESS
> INTERRUPTION OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES,
> DAMAGES RELATING TO PROPERTY DAMAGE, BODILY INJURY, OR
> DAMAGES RELATING TO WRONGFUL DEATH) ARISING OUT OF OR
> RELATED TO THE OPERATION, USE, POSSESSION OR RENTAL OF
> THE EQUIPMENT. THIS INDEMNITY PROVISION ALSO APPLIES TO
> ANY CLAIMS ASSERTED AGAINST UNITED BASED UPON STRICT OR
> PRODUCT LIABILITY CAUSES OF ACTION, HOWEVER, CUSTOMER
> SHALL NOT BE OBLIGATED TO INDEMNIFY UNITED FOR THAT PART
> OF ANY LOSS, DAMAGE OR LIABILITY CAUSED SOLELY BY THE
> INTENTIONAL MISCONDUCT OR SOLE NEGLIGENCE OF UNITED. IN
> FURTHERENCE OF, BUT NOT IN LIMITATION OF THE INDEMNITY
> PROVISIONS IN THIS AGREEMENT, CUSTOMER EXPRESSLY AND
> SPECIFICALLY AGREES THAT THE FOREGOING OBLIGATION TO
> INDEMNIFY SHALL NOT IN ANY WAY BE AFFECTED OR DIMINISHED
> BY ANY STATUTORY OR CONSTITUTIONAL LIMITATION OF
> LIABILITY OR IMMUNITY CUSTOMER ENJOYS FROM SUITS BY ITS
> OWN EMPLOYEES. THE DUTY TO INDEMNIFY WILL CONTINUE IN
> FULL FORCE AND EFFECT NOT WITHSTANDING THE EXPIRATION
> OR EARLY TERMINATION OF THE CONTRACT.

(Ans., Affirmative Defs., Demand for Jury Tr. & Counter Claim ex. A, at 2, 4.)

Later, the boom lift somehow became stuck, and United sent a representative to check on the lift. (Compl. at ¶ 7–8.) United's representative allegedly attempted to move the lift out of the dirt by raising the lift's platform with Acosta on board. (*Id.* at ¶ 10–11.) After the lift reached forty feet high, it tilted over and threw Acosta out, causing his injuries. (*Id.* at ¶ 12.)

Acosta filed the present suit in the state court, which United removed to this Court. United then filed its Answer, Affirmative Defenses, Demand for Jury Trial, and the Counter Claim that is the subject of this motion. The answer contained a counterclaim for contractual indemnity based on the Agreement as well as fifteen affirmative defenses. Acosta has moved to dismiss the counterclaim, to strike several affirmative defenses, and to require United to give a more definite statement with regard to several affirmative defenses.

## STANDARD OF REVIEW

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *Spitalny v. Insurers Unlimited Inc.*, 2005 WL 1528629 at *1 (M.D. Fla. June 24, 2005). To survive a Rule 12(b)(6) motion to dismiss, a claim must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, a claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. While factual allegations are entitled to the presumption of truth, such conclusory allegations are not. *Id.* at 555–556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556).

The Court may consider and interpret the Agreement attached to the counterclaim. A 12(b)(6) motion ordinarily limits a court to the face of the pleading and anything attached thereto. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). Such an attached document may be considered if it is central to the claim and its authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). United attached a copy of the Agreement to its counterclaim and neither party has contested its authenticity. The Court notes that United quotes different language in its response to Acosta's motion, but because United provided the Agreement itself, the Court must assume the quote was an error on United's part and not a dispute over the Agreement's validity. The Agreement is central to United's counterclaim because the counterclaim is based entirely on the indemnification clause. Accordingly, the Court may consider the Agreement in ruling on Acosta's motion.

## DISCUSSION

Acosta raises two separate issues: whether United's counterclaim for indemnity is enforceable and whether several of United's affirmative defenses are sufficiently pled. United's indemnity counterclaim fails as a matter of law because the Agreement does not unequivocally require Acosta to indemnify United for United's own negligence towards Acosta. United's eighth affirmative defense must be struck because implied assumption of the risk has been merged into comparative fault and is no longer a defense under Florida law. The Court will not strike United's

other affirmative defenses—while they are perhaps more than necessary, they do not prejudice Acosta and are better resolved after discovery.

## I.   Indemnity Counterclaim

Acosta argues that this Court should dismiss United's indemnity counterclaim because (1) the Agreement only requires Acosta to indemnify United against claims brought by third parties; and (2) the Agreement does not specifically require Acosta to indemnify United in the case of United's own negligence. The Court agrees.

### A.   Third-Party Requirement

Neither party has presented any controlling authority demonstrating that an indemnity clause applies (or does not apply) to a claim brought by the party providing indemnification. Dicta from the Florida Supreme Court defining contractual indemnity as "an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party" appears to support Acosta's position. *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 643 (Fla. 1999); *accord Royal Indem. Co. v. Knott*, 136 So. 474, 475 (Fla. 1931) (noting that an indemnity contract protects against liability "to a third person"). But seemingly conflicting dicta from other Florida court cases implies that such an indemnification agreement is possible. *See O'Connell v. Walt Disney World Co.*, 413 So. 2d 444, 446 (Fla. 5th Dist. Ct. App. 1982) (noting in dicta that an indemnification clause may sometimes shift responsibility "back to the injured party, thus producing the same effect as an exculpatory provision").

5

Other federal district courts applying Florida law have held that a claim for contractual indemnity requires a claim from a third party. *ProtoTech, Inc. v. Unicity Int'l, Inc.*, 547 F. Supp. 2d 1174, 1180 (W.D. Wash 2008); *Fla. State Bd. of Admin. v. Law Eng'g and Envtl. Servs.*, 262 F. Supp. 2d 1004, 1020–1021 (D. Minn 2003). In *Law Engineering*, the plaintiff brought a claim for contractual indemnity against the defendant because the defendant's estimate for the cost of repairing a building was over a million dollars lower than the actual cost. 262 F. Supp. 2d at 1006–1007. The District of Minnesota granted summary judgment for the defendant on the indemnity claim. *Id.* at 1021. While the indemnity clause as written protected against "any . . . loss," the court held that it had to be interpreted in light of Florida law, which defined indemnity as protection against loss to a third party. *Id.* at 1020–1021 (quoting *Dade County*, 731 So. 2d at 643). The Western District of Washington reached the same result in *ProtoTech*, and it dismissed an indemnification claim brought by a patent infringement plaintiff against the infringer. *ProtoTech*, 547 F. Supp. 2d at 1180.

Because United's interpretation of the agreement would give the indemnity provision the effect of an exculpatory clause, the Court finds that the legal requirements for an exculpatory clause are also relevant here. Florida courts recognize a distinction between exculpatory clauses and indemnity clauses but sometimes apply similar requirements to both clauses because of their related functions. *See Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP*, 832 So. 2d 270, 272 (Fla. 4th Dist. App. 2002) (applying requirements for an indemnity clause to an exculpatory agreement). Florida courts recognize exculpatory clauses, but they are

6

looked upon with disfavor and must unequivocally indicate what the party is

contracting away. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166–1167 (11th

Cir. 2009) (citing *Sunny Isles Marina, Inc. v. Adulami*, 706 So. 2d 920, 922 (Fla. 3d

Dist. Ct. App. 1998)). In order to meet this requirement, the clause must be so clear

that "'an ordinary and knowledgeable party will know what he is contracting away.'"

*Id.* at 1167 (quoting *Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc.*, 974

So. 2d 565, 568 (Fla. 2d Dist. Ct. App. 2008)) (some internal quotations omitted).

While it may be possible to create a contract that requires a party to

indemnify even its own claims, the Agreement here does not require Acosta to

indemnify United for Acosta's own claim. Like in *Law Engineering*, the

indemnification clause does not explicitly address whether the Agreement requires

Acosta to indemnify United against his own claims. This surely did not

"unequivocally indicate" that Acosta was essentially giving up his right to sue

United. In light of Florida's requirement for unequivocal exculpatory contracts and

the fact that United seeks to use the indemnification provision like an exculpatory

provision, the Court agrees with *Law Engineering* and *ProtoTech*'s analysis. The

indemnification clause in the Agreement does not apply to claims brought by Acosta

because it does not unequivocally state that it applies to such claims.

Additionally, there is a section in the Agreement that addresses "Limitation

on Liability" and speaks directly to United's responsibility for Acosta's claims. *See*

*Law Eng'g*, 262 F.Supp.2d at 1021 (quoting *Raytheon Subsidiary Support Co. v.*

*Crouch*, 548 So. 2d 781, 784 (Fla. 4th Dist. Ct. App. 1989)) (noting that a contract

should be interpreted "'as a whole, not in its isolated parts'"). This motion does not

7

address that section of the Agreement, so the Court offers no opinion on its validity

or application to this claim. Still, it would be counterintuitive for a provision that is

silent on claims between the parties to govern when a provision directly addresses

that situation.

### B. Indemnification for United's Own Negligence

Additionally, an indemnification clause that applies to a party's own wrongful

conduct is not enforceable unless it unequivocally expresses that the party's own

negligence is covered by the agreement. *Charles Poe Masonry, Inc. v. Spring Lock*

*Scaffolding Rental Equip. Co.*, 347 So. 2d 487, 489 (Fla. 1979); *accord Bender v.*

*CareGivers of Am.*, 42 So. 3d 893, 894 (Fla. 4th Dist. Ct. App. 2010) (exculpatory

clauses). Florida law disfavors such clauses. *Charles Poe*, 347 So. 2d at 489. In

*University Plaza Shopping Center, Inc. v. Stewart*, 272 So. 2d 507, 511–512 (Fla.

1973), the Florida Supreme Court decided that a general indemnification clause

providing for "any and all claims" did not cover the indemnitee's own negligence.

Although the Court initially limited this ruling to situations where the indemnitee

was solely at fault, in *Charles Poe* and *Cox Cable Corp. v. Gulf Power Co.*, 591 So. 2d

627 (Fla. 1992), the Court held that general indemnification clauses did not cover

joint negligence of the indemnitee and another party either. In *Cox Cable*, the Court

indicated that an indemnification agreement must meet the same standard whether

it seeks to indemnify for joint negligence or sole negligence: it must "express an

intent to indemnify against the indemnitee's own wrongful acts in clear and

unequivocal terms." 591 So. 2d at 629 (internal quotations omitted).

While Acosta argues that the Agreement is vague on this point, it is actually fairly specific. Unfortunately for United, it specifically indicates that Acosta is not required to indemnify United for United's own negligence. The Agreement states, "HOWEVER, CUSTOMER SHALL NOT BE OBLIGATED TO INDEMNIFY UNITED FOR THAT PART OF ANY LOSS, DAMAGE OR LIABILITY CAUSED SOLELY BY THE INTENTIONAL MISCONDUCT OR SOLE NEGLIGENCE OF UNITED." This unequivocally limits Acosta's liability in the case of United's sole negligence. The Agreement does not speak to joint negligence between Acosta and United. Thus, for joint negligence, the Agreement does not express that the indemnification clause applies "in clear and unequivocal terms." *Id.* Because the Agreement does not validly require Acosta to indemnify United for United's sole or joint negligence, United's counterclaim fails as a matter of law.

## II.     Affirmative Defenses

Acosta has moved to strike United's second, seventh, eighth, ninth, and fourteenth affirmative defenses and to order United to give a more definite statement concerning its sixth, seventh, tenth, eleventh, twelfth, thirteenth, and fifteenth affirmative defenses. The Court will first consider whether any defenses must be struck and will then consider the motions for a more definite statement.

### A.  *Motions to Strike*

The Court may strike, on a party's motion or of its own accord, "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative defense attacks the plaintiff's case by raising defenses outside of the elements of the plaintiff's case. *In re Rawson Food*

*Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Thus, a defense that merely denies part of the plaintiff's complaint is not an affirmative defense. *Id.* But striking an affirmative defense "is a drastic remedy generally disfavored by courts." *Pujals ex rel. El Ray de Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011). "A motion to strike should be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Schmidt v. Life. Ins. Co. of N. Am.*, 2012 WL 4513765 at *1 (M.D. Fla. 2012). Accordingly, a denial mislabeled as an affirmative defense should not be struck, but should be treated as a specific denial. *Ohio Nat'l Life Assurance Corp. v. Langkau*, 2006 WL 2355571 at *2 (M.D. Fla. 2006); *accord Pujals*, 777 F. Supp. 2d 1328.

Such is the case with United's second and ninth affirmative defenses. The second defense alleges that Acosta "was instructed on the proper operation of the lift and was warned of the need for fall protection" when he rented the equipment. (Ans. 3.) The ninth defense alleges that Acosta was again warned of these same things at the time of the accident. (Ans. 5.) These seem to more properly be denials of Acosta's allegations in paragraphs 14(a)(vii) and (d) of the complaint, which allege that United "fail[ed] to offer appropriate training" and "failed to appreciate or to warn" Acosta of the need for safety equipment and thus breached its duty to Acosta. While the defenses are slightly repetitive, they do allege separate instances where Acosta was warned and are thus not entirely repetitive or immaterial. Because these defenses do not prejudice Acosta, the Court will treat them as specific denials and will deny the motion to strike these defenses.

Acosta argues that he cannot respond to United's seventh affirmative defense, which alleges that Acosta "is entitled to free and/or low cost medical care and services" that should offset his damages. (Ans. 4.) Acosta's motion offers no reason why he is unable to admit or deny this allegation. Further, inability to respond is not listed in Rule 12(f) as a reason to strike part of a pleading—the proper remedy for inability to respond is a motion for a more definite statement, addressed below. The motion to strike is therefore denied.

United's eighth affirmative defense alleges assumption of the risk. (Ans. 5.) Acosta argues that the Court should strike this defense because assumption of the risk is no longer a defense under Florida law. Florida courts have abolished implied assumption of the risk as a defense, but express assumption of the risk remains a valid defense. *Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 937 (Fla. 1991); *Blackburn v. Dorta*, 348 So. 2d 287, 292 (Fla. 1977). Express assumption of the risk is largely limited to contractual assumption of the risk and participation in contact sports. *See Mazzeo v. City of Sebastian*, 550 So. 2d 1113, 1116–1117 (Fla. 1989) (refusing to expand express assumption of the risk to noncontact sports); *Blackburn*, 348 So. 2d at 290 (noting that express assumption of the risk includes contracts expressly assuming risk and voluntary participation in a contact sport). In *Mazzeo*, the plaintiff dove from a pier into an artificial lake that was only three to four feet deep. 550 So. 2d at 1114. Assuming that she knew the depth of the lake and that diving might injure her, the Florida Supreme Court held that she had not expressly assumed the risk. *Id.* at 1116–1117. The Court relied upon the fact that she "did not

11

dive with the intention of injuring herself, and she did not expressly agree to absolve the city of any liability if she did." *Id.* at 1117.

Like in *Mazzeo*, the conduct alleged in United's eighth affirmative defense is more properly characterized as implied assumption of the risk, which Florida law has merged with comparative fault. United's defense alleges that Acosta "was participating in an activity in which he knew or should have known involved a risk of harm." (Ans. 5.) It does not allege contractual assumption of the risk or participation in a contact sport. Just as Mazzeo dove into the lake knowing that it was shallow and that she might thereby be injured, United alleges Acosta participated in "an activity" knowing of a risk and that he might be injured. Even if this was "foolhardy conduct," the jury properly decides how it affects the result under comparative fault. *Id.* Thus, United's eighth affirmative defense is legally insufficient, and the Court grants Acosta's motion to strike the defense.

Acosta moves to strike United's fourteenth affirmative defense, which "affirmatively alleges the provisions of" *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993). (Ans. 6.) *Fabre* allows defendants to apportion some degree of fault to a nonparty to the suit. *Id.* at 1185. Although Acosta is correct that United must eventually specifically plead the name of a nonparty to include such a nonparty on the verdict form, the Court agrees with the Southern District that it is too early to conclude that United will be unable to produce any other nonparties. *Sachi v. Labor Ready Se.*, 2010 WL 3259916 at *2 (S.D. Fla. Aug. 18, 2010); *see also Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1264 (Fla. 1996) (requiring the defendant to "specifically identify the nonparty"). As the Southern District noted, United must

12

later amend its complaint with the name of a specific nonparty, but "[i]ts failure to do so at this stage . . . is not a ground for striking this affirmative defense." *Sachi*, 2010 WL 3259916 at *2.

In sum, Acosta's motion to strike is granted for United's eighth affirmative defense because implied assumption of the risk is not a separate defense from comparative fault under Florida law. United's other defenses remain because, although they may be inefficiently pled, they are not entirely irrelevant and do not prejudice Acosta.

### B. Motions for a More Definite Statement

If a pleading is "so vague or ambiguous" that a party cannot respond to it, even with a simple denial, that party may ask for a more definite statement. Fed. R. Civ. P. 12(e); *Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012). Federal courts disfavor this motion because the liberal pleading standard of the Federal Rules of Civil Procedure is designed primarily for notice. *BB in Tech. Co., Ltd. v. JAF, LLC*, 242 F.R.D. 632, 640 (S.D. Fla. 2007). Litigants should obtain information to build their case through discovery, not through motions for a more definite statement. *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 911 (M.D. Fla. 2007). A motion for a more definite statement is intended to remedy an unintelligible pleading, not to provide more details. *Euro RSCG*, 872 F. Supp. 2d at 1358.

Acosta has moved for an order requiring United to give a more definite statement on United's sixth, seventh, tenth, eleventh, twelfth, thirteenth, and fifteenth affirmative defenses. Although the Court recognizes that United's mass of

affirmative defenses may not have been efficient or organized, each defense appears to be intelligible and Acosta has provided no reason why responding would be impossible or would prejudice him. For United's seventh affirmative defense, Acosta has not even met Rule 12(e)'s requirement that he "point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). While Acosta at least indicates what details he wants included in the other defenses, he provides no reason why he cannot respond, even with a simple denial, without the information he seeks. Rather than laboring over the pleadings, Acosta should seek this information in discovery. Because the relevant affirmative defenses are intelligible and there is no reason why Acosta cannot simply deny the defenses without prejudicing himself, Acosta's motions for more definite statements are denied.

## CONCLUSION

United's counterclaim for indemnity fails as a matter of law because the Agreement not does unequivocally require Acosta to indemnify United for United's own negligence towards Acosta. United's eighth affirmative defense fails as a matter of law because Florida law has merged implied assumption of the risk with comparative fault. United's remaining affirmative defenses are adequately pled for this stage of the proceedings. Accordingly, it is:

**ORDERED** that Plaintiff's Motion to Dismiss Counterclaim for Failure to State a Claim upon Which Relief Can Be Granted and to Strike Certain of Defendant's Affirmative Defenses or for More Definite Statement (Doc. 9) be **GRANTED with prejudice** as to the counterclaim and United's eighth affirmative defense and **DENIED** with respect to all other affirmative defenses. The counterclaim is dismissed from this action.

**DONE AND ORDERED** in Chambers at Tampa, Florida this 7th of March, 2013.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.

15